# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN HOLLOWAY,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>Defendant. | 1:05cv0275 AWI DLB<br><br>FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Joan Holloway ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge, for findings and recommendation to the District Court.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff has filed numerous applications for disability insurance and SSI benefits. Her most recent application was filed on December 2, 2002. AR 70, 340. She alleged disability since October 1, 1997, due to neck, back, head, arm and leg pain, and loss of memory. AR 110. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 53-56, 59-62, 63. On September 23, 2003, ALJ James Baker held a hearing. AR 356-386. ALJ Baker denied benefits on January 13, 2004. AR 13-20. On December 21, 2004, the Appeals Council denied review. AR 6-9.

Plaintiff filed a previous application which was denied by ALJ Havens on June 5, 2001. AR 24-39.

Hearing Testimony

On September 23, 2003, ALJ Baker held a hearing in Stockton, California. AR 356. Plaintiff appeared with her attorney, Jeffrey Milam. AR 356.

Plaintiff testified that she was taking two new medications- one for depression because she was suicidal and one for sleeping. AR 361. Her depression is getting worse and she is still suicidal. AR 361-362. She lost over 20 pounds in less than one year. AR 362. She lives alone and receives financial support from her son and brother-in-law. AR 363. She has no income. AR 363. Her friend and brother-in-law also provide emotional support. AR 364.

Plaintiff has a driver's license but doesn't drive when she takes her medications because they make her sleepy. AR 364-365. She goes to Mental Health once or twice a week and sees a therapist. AR 366. Her therapist wanted her to come once a week but she could not because she could not afford the gas. Plaintiff could not remember her therapist's name because she has had problems with remembering things for the past couple of years. AR 366. She also gets confused and has problems concentrating. AR 366. She explained that some days she forgets to eat or forgets to do anything. AR 367. She sometimes cooks and sometimes does housework. AR

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

367. She has forgotten about food she cooked and forgets about the laundry. AR 367. She watches television a couple of hours a night but forgets what she watches. AR 368.

Plaintiff testified that she has physical problems as a result of a car accident. AR 370. The accident caused pain in her tailbone and a herniated disc in her neck and lower back. AR 370-371. She also has migraines, for which she receives shots. AR 371, 375. She uses a nebulizer two to three times per day and also uses an inhaler. AR 377-378. She has shortness of breath and problems coughing. AR 379-380.

Plaintiff thought she could be on her feet for 20 minutes, but did not know if she could do more. AR 372. She can sit in one spot for 20-30 minutes, with medication. AR 372. She can lift a gallon of milk. AR 373.

When questioned by her attorney, Plaintiff explained that if she tried to lift two gallons of milk, her neck and back would hurt. AR 373. Her neck and back always hurt, one sometimes more than the other. AR 375.

Plaintiff admitted that she has a history of heroin dependency, but that she has not used illegal drugs since she was 20. AR 381. She also drank heavily when she was about 25 and considered herself an alcoholic. AR 381-382.

Medical Evidence

______In January 1998, Plaintiff received emergency room treatment after she was involved in a motor vehicle accident. AR 207- 213. She was discharged with a scalp contusion and back strain. AR 209.

On January 28, 1998, Plaintiff underwent a CT scan of the lumbosacral spine. The test revealed no disc herniation or spinal stenosis. AR 266.

On February 9, 1998, Plaintiff saw Nurse Practitioner Pat Doplemore. She complained of neck, shoulder, right arm and leg discomfort, as well as abdominal pain. She was diagnosed with multiple trauma secondary to an auto accident, cervicothoracic and lower lumbar strain, costochondritis, especially of the right side, numbness of the upper and lower extremities, and abdominal pain. AR 265. Nurse Doplemore prescribed medication and referred Plaintiff to a neurosurgeon. AR 265.

A July 24, 1998, CT scan of the pelvic sacrum and coccygeal revealed no fractures. There was a "hook like anterior angulation of the distal coccyx which may be congenital or post-traumatic in nature," but it was not associated with an inflammatory change or presacral hematoma. AR 264.

In January 1999, Plaintiff returned to Nurse Doplemore and explained that she pulled a muscle in her neck when she was reaching up into a cabinet. She had pain with range of motion and tenderness with palpation. She was diagnosed with cervicalgia. AR 262, 261.

On February 16, 1999, Plaintiff underwent an MRI of the dorsal spine. AR 263. There was no evidence of acute fractures, cord compression, nerve root impingement or disc protrusion. Multiple Schmorl node deformities were noted between T6 and T10, but clinical correlation of Scheuerman's disease was needed to confirm the significance of the deformities. AR 263.

______From April 1999 through December 1999, Plaintiff repeatedly complained of upper and lower back pain and neck pain, AR 257-259. In December 1999, Plaintiff indicated that she was receiving shots which helped, but she was still in pain. AR 257.

______In March 2000, Plaintiff complained of pain in her right arm and upper and lower back, as well as headaches. She received cortisone shots in her neck, right arm and tailbone. AR 255.

______Plaintiff continued to complain of back pain in January and August 2001. AR 253-254.

______On January 8, 2002, Plaintiff complained of daily pain in her upper back, neck and shoulder for which she had to take medication. She had paraspinous tenderness of the cervicothoracic spine and difficulty with range of motion of the shoulder. She was diagnosed with trauma injuries to the upper back and neck. AR 252.

______Plaintiff saw Nurse Doplemore on June 6, 2002, and complained of continuing upper back and neck pain. Plaintiff described tenderness and spasms in her upper back and neck with continuous pain. Upon examination, she had limited range of motion in her neck, pain with palpation of the cervical thoracic spine, paraspinous tenderness, and difficulty raising her arms above her head. AR 251. She was diagnosed with cervical thoracic pain and acute back pain secondary to an old injury. AR 251.

_____On July 12, 2002, Plaintiff saw consultive orthopedist Steve McIntire, M.D. Plaintiff complained of lower back pain due to fracturing her tailbone in a motor vehicle accident three years ago. Dr. McIntire did not detect any vertebral deformities or paraspinal muscle spasm, although there was some loss of range of motion of the lumbar spine. There was some embellishment on strength testing. Her diagnosis was "question mild degenerative osteoarthritis of the lumbar spine." Dr. McIntire described the examination as marked by nonphysiological findings and embellishment. Plaintiff had calluses at the bases of her fingers on both hands, suggesting recent power gripping activities. Other than the loss of range of motion in the lumbar spine, Plaintiff had no other physical findings. Dr. McIntire opined that Plaintiff should avoid very heavy lifting or carrying activities. She would be limited to lifting/carrying no more than 20 pounds frequently or 50 pounds occasionally. She would have no further limitations. AR 149-152.

______In July 2002, State Agency physician Thien Nguyen, M.D., completed a Physical Residual Functional Capacity form. He opined that Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for a total of at least two hours in an eight hour day, and sit for total of about 6 hours in an eight hour day. She could frequently balance and occasionally climb, stoop, kneel, crouch, and crawl. AR 153-160.

______On August 9, 2002, Plaintiff saw Les P. Kalman, M.D., for a psychiatric evaluation. She complained of trouble sleeping, nightmares, and thoughts of suicide. Upon mental status examination, her memory was impaired and her insight and judgment were poor. Her mood was depressed and she admitted to suicidal thoughts. She also had impaired concentration and attention. Dr. Kalman diagnosed major depressive disorder, adjustment disorder, depressed, secondary to general medical condition. He opined that Plaintiff could understand, remember and carry out simple one and two step tasks. She had a decreased ability to deal with co-workers, supervisors and the public, and could not maintain concentration and attention. She had a limited ability to withstand the stress and pressures associated with daily work activities. AR 163-165.

In September 2002, a State Agency physician completed a Mental Residual Functional Capacity Assessment form and opined that Plaintiff was moderately limited in her ability to

understand, remember and carry out detailed instructions, and in her ability to work in coordination with, or proximity to, others without being distracted by them. She was also moderately limited in her ability to complete a normal workday and workweek, accept instructions, get along with co-workers, and set realistic goals. AR 167-170.

______On October 7, 2002, Plaintiff saw Nurse Doplemore after injuring her face, arm, and knee. Plaintiff explained that she was "tussling with her dog and fell into a ditch." AR 250. Plaintiff also stated that she continued to have upper and lower back pain from an old injury. AR 250. Nurse Doplemore diagnosed Plaintiff with insomnia, injury with cellulitis to left side of face secondary to trauma, and a history of back pain. AR 250.

______On October 16, 2002, Plaintiff was seen in the emergency room at St. Joseph's Medical Center after she was in a physical altercation with a truck driver. She was diagnosed with acute cervical and lumbar paraspinal strain, acute contusion of the coccyx, contusion of the left thigh, physical assault, and migraine cephalgia. AR 186-187. An x-ray taken the same day revealed mild disc space narrowing at lumbosacral junction and C7-T1, but no acute traumatic injury. AR 188-189.

Plaintiff saw Nurse Doplemore on October 31, 2002, for evaluation after her altercation. Plaintiff explained that she was the victim of a road rage incident and hit her head on the pavement when she was pushed down. She was diagnosed with headaches, uncertain etiology, and cervical thoracic lumbosacral strain. AR 249.

A November 4, 2002, cranial CT scan revealed "probable contra-coup contusions to the anterior-inferior temporal lobes in the middle cranial fossa." AR 248. These were described as "small and not associated with edema or midline shift." AR 248.

On November 14, 2002, Nurse Doplemore diagnosed Plaintiff with hematuria and prescribed medication. AR 247.

______Plaintiff saw Nurse Doplemore on December 5, 2002, and complained of right-sided stomach and back pain. AR 245. She also complained of continued headaches where her head hit the pavement during the October altercation. After an examination, Nurse Doplemore

assessed Plaintiff with abdominal pain of uncertain etiology and a resolving concussion. AR 245.

______A January 6, 2003, abdominal ultrasound was normal. AR 244.

______On January 15, 2003, State Agency physician S. Fountaine, M.D., completed a Physical Residual Functional Capacity Assessment Form. Dr. Fountaine opined that Plaintiff could occasionally and frequently lift 10 pounds, could stand and/or walk at least 2 hours in an eight hour day, and could sit for a total of about 6 hours in an eight hour day. AR 215. This opinion was affirmed on April 23, 2003. AR 214.

On January 22, 2003, a State Agency physician completed a Mental Residual Functional Capacity Assessment form, opining that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, and in her ability to work in coordination with, or proximity to others without being distracted by them. She was also moderately limited in her ability to complete a normal workday and workweek, interact appropriately with the public, accept instructions, respond appropriately to changes in the work setting, and set realistic goals. AR 224-225. This opinion was affirmed on April 21, 2003. AR 226.

______On January 28, 2003, Plaintiff saw Nurse Doplemore and complained of continuing headaches, neck pain and lower abdominal pain. She had limited range of motion in her neck. The nurse assessed "cervialgia secondary to accident, also headaches secondary to concussion" and gave Plaintiff an appointment to see a neurologist. AR 243.

On April 21, 2003, State Agency physician Rosemary Tyl, M.D., opined that Plaintiff had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. AR 277.

______On April 3, 2003, Nurse Doplemore completed a questionnaire in which she opined that Plaintiff's medical problems prevented her from performing work at any exertional level. Her primary impairments were "neck; upper and lower back pain; headaches." AR 309. Plaintiff could sit for two hours at a time and could stand/walk for two hours at a time. AR 309. Plaintiff

could lift 10 pounds for up to one-third of a workday. AR 310. This form was also signed by John Newman, M.D. AR 310.

Records from the San Joaquin County Mental Health Services indicate that Plaintiff received treatment from June 2003 through September 2003 for major depressive disorder with psychosis. AR 319-327. She was treated with medication. AR 325.

On September 3, 2003, Robert Graff, M.D., completed a mental medical report. He listed his clinical findings as insomnia and indicated that there were no laboratory findings. He diagnosed psychotic disorder not otherwise specified and indicated that Plaintiff's response to treatment was okay. AR 312.

ALJ's Findings

The ALJ first explained that Plaintiff had filed previous applications for benefits that were denied by an ALJ on June 5, 2001. Based on his review of the medical evidence, the ALJ determined that Plaintiff had not rebutted the presumption of continuing nondisability because the medical evidence failed to show changed circumstances. AR 16, 20. The ALJ therefore adopted the prior residual functional capacity ("RFC") finding- Plaintiff could occasionally and frequently lift and/or carry up to 10 pounds, perform unrestricted sitting, stand and/or walk for about two hours in an eight hour work day, perform limited reaching with her right arm, occasionally climb, balance, stoop, crouch, crawl and kneel, and perform simple, routine and repetitive tasks. AR 16.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2] Here, the ALJ determined that Plaintiff had not rebutted the presumption of continuing nondisability and therefore adopted the findings of the previous ALJ. The previous ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an impairment or a combination of impairments that is considered "severe" (back strain and depression) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

---

[2]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

Regulations No. 4; (4) cannot perform her past relevant work; and (5) retains the RFC to perform a significant range of sedentary work. AR 35.

Plaintiff contends that the ALJ (1) did not properly review the evidence of record and (2) failed to properly review Plaintiff's testimony.

Prior to analyzing Plaintiff's claims, a discussion of the procedural aspect of this case is helpful. As set forth above, the ALJ reviewed Plaintiff's case in light of her previous applications. The ALJ was therefore bound by the prior finding of nondisability unless Plaintiff could rebut this presumption by demonstrating "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). Accordingly, it was within this context that the ALJ examined Plaintiff's medical evidence.

**DISCUSSION**

A. Review of Testimony

Plaintiff argues that the ALJ failed to properly review the evidence because (1) he failed to properly consider and credit the opinion evidence related to her mental condition; and (2) he improperly discounted the opinion of Dr. Newman.

1. Evidence of Plaintiff's Mental Condition

Plaintiff makes numerous arguments in support of her contention, beginning with her assertion that the ALJ ignored the limitations assessed by the State Agency physicians and the Consultive Examiner.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler,* 753 F.2d 1450 (9th Cir.1984). Even if contradicted by another doctor, the

opinion of an examining physician can only be rejected for specific and legitimate reasons supported by substantial evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant,* 753 F.2d at 1456. Only where an abundance of other evidence supports the ALJ rejection of a treating or examining physician can the ALJ rely on the opinion of a nonexamining physician. *Magallanes v. Bowen,* 881 F.2d 747, 751-52 (9th Cir.1989).

The ALJ set forth Dr. Kalman's diagnosis of major depression and adjustment disorder and his opinion that Plaintiff had a decreased ability to deal with others and was unable to maintain adequate concentration and attention. AR 17. The ALJ rejected this opinion, however, finding that Dr. Kalman gave "undue weight" to Plaintiff subjective reports, which the prior ALJ found to be not credible. AR 17. An ALJ may reject a physician's opinion because it was based on the claimant's discredited subjective complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989). Indeed, Dr. Kalman indicated that Plaintiff, whom he described as a "fair historian," was the only source of information as he had no accompanying records. AR 163.

In support of his finding, the ALJ also refers to the evidence of Plaintiff's questionable credibility, including the prior ALJ's finding that she was not wholly credible. AR 16. The ALJ also cites a consultive examiner's notation that Plaintiff was embellishing her symptoms and had calluses, which are inconsistent with her allegations of disabling back pain. AR 16. He notes that Plaintiff indicated that she was injured while "tussling with [her] dog," that her complaints had "uncertain etiology," and that she "self-referred" herself to a mental health clinic "due to needing SSI papers filled out." AR 16. Plaintiff attempts to dispute these findings, but the ALJ is entitled to draw inferences logically flowing from the evidence. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In any event, despite his other opinions, Dr. Kalman opined that Plaintiff could understand, remember and carry out simple one and two step tasks. AR 165.

Accordingly, to the extent Plaintiff argues that the ALJ ignored certain aspects of Dr. Kalman's opinion, the fact remains that he believed Plaintiff capable of performing simple tasks.

Next, Plaintiff points to the opinions of the State Agency physicians in support of her argument that her mental condition had worsened. The ALJ reviewed these opinions, but concluded that the opinions did not preclude the execution of simple, routine, repetitive tasks. AR 17-18. Even if these assessments precluded unskilled work, the ALJ explained that they were not entitled to much weight "secondary to Plaintiff's credibility problems." AR 18. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002).

Insofar as Plaintiff faults the ALJ for not reviewing the "evidence at the time of the prior decision," the ALJ was not required to do so. The period covered by the ALJ's June 5, 2001, decision is administratively final and not open for review. While the ALJ had to review the 2001 decision and analyze the current medical evidence in light of that decision, he was not required to review the evidence from that period.

As Plaintiff points out, the medical evidence contained numerous contradictions. For example, Dr. Kalman opined that Plaintiff could perform simple, repetitive tasks, yet he opined that she was unable to maintain attention and concentration. AR 165. The ALJ is responsible for resolving conflicts in the medical evidence, and the Court must uphold the ALJ's decision where the evidence is susceptible to more than one interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Given the totality of the evidence, the ALJ's determination was supported by substantial evidence.

2. Opinion of Dr. Newman

Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's treating physician, Dr. Newman, who opined that Plaintiff's impairments preclude her from work at any exertional level. AR 309. This opinion was expressed in a form completed by Nurse Doplemore and signed by both Nurse Doplemore and Dr. Newman. AR 310. The ALJ first correctly noted that there is little indication that Dr. Newman personally examined Plaintiff as all of the treatment notes from Sutter Gould Medical Foundation were authored by Nurse Doplemore. AR 242-266. Thus, the opinion was properly rejected as that of non-acceptable medical source. 20

C.F.R. §§ 404.1513(a), 416.913(a). Nurse Doplemore is considered to be an "other source" whose opinion the ALJ may give less weight than that of an acceptable medical source. 20 C.F.R. §§ 404.1513(d), 416.913(d); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Although there are exceptions to this rule, such as when a treating physician adopts the opinion of an unacceptable medical source[3] or when the unacceptable source works closely with a physician, they are not applicable here. *Polny v. Bowen*, 864 F.2d 661, 662-664 (9th Cir. 1988); *Gomez c. Chater*, 74 F.3d 967 (9th Cir. 1996).

Even if Nurse Doplemore's opinion could be construed as that of an accepted medical source, the ALJ further explains that the report refers to few, if any, objective findings. AR 19. Specifically, the ALJ explained that no new and material objective signs and findings are reported, and that he was "confident" that if such objective signs appeared, the doctor would have noted them on the report. AR 19. The ALJ stated that he "could only infer that the doctor and nurse practitioner are believing what the claimant is telling them." AR 19. Given Plaintiff's questionable credibility, the ALJ did not give this assessment much weight. AR 19. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002).

The ALJ further explained that inconsistencies existed between the opinion and the clinical and laboratory findings because the treatment records do not note that Plaintiff has any problems using her hands. AR 19. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ explained that there are inconsistencies between the opinion and Plaintiff's daily activities. AR 19. As examples, the ALJ set forth the evidence that Plaintiff is able to play roughly with her dog. AR 19. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc.Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

Finally, the ALJ notes that the opinion is unsupported, brief and/or conclusory, and is expressed in a checklist without adequate explanation of the basis of the conclusions. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

[3] While an argument may be made that his signature is an adoption of Nurse Doplemore's opinion, this argument carries little weight given that there is no evidence that Dr. Newman ever examined Plaintiff.

Insofar as Plaintiff faults the ALJ for refusing to grant her request to subpoena records from Sutter Gould dated January 1987 to September 2003, her argument is without merit. The duty to develop the record arises only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). There is no indication here that the evidence was either ambiguous or inadequate to allow for a proper evaluation.

In summary, the ALJ properly considered the medical record in finding that Plaintiff had not met her burden of rebutting the presumption of continuing nondisability.

B. Plaintiff's Testimony

Next, Plaintiff contends that the ALJ failed to properly review her testimony. Specifically, Plaintiff contends that the ALJ failed to note his responsibility pursuant to SSR 96-7p and therefore failed to give adequate reasons for rejecting Plaintiff's testimony.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

First, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure through which an ALJ must assess the claimant's credibility. While courts give the SSRs some deference, they do not have the force of law. *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1 (9th Cir. 2001).

Second, as Respondent explains, the prior ALJ found Plaintiff not disabled and it was thus Plaintiff's burden to overcome that finding. Based on the medical evidence, the ALJ determined that Plaintiff failed to rebut the presumption of continuing nondisability. AR 16, 20. As the ALJ noted, where the claimant has not rebutted the presumption, the question of making a "subordinate finding regarding credibility does not arise." AR 16; *Chavez v. Bowen*, 844 F.2d 691; AR 97-4p.

Insofar as the ALJ referred to specific instances of Plaintiff's credibility, he did so in the context of bolstering the prior credibility finding. AR 16. He noted that her current complaints were of "uncertain etiology," and that she "self-referred" herself to mental health on September 24, 2003 because she needed SSI paperwork filled out. AR 16, 245, 319. The ALJ is entitled to draw inferences logically flowing from the evidence. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Jo Anne B. Barnhart and against Plaintiff Joan Holloway.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings

and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: January 29, 2006** **/s/ Dennis L. Beck**
3b142a UNITED STATES MAGISTRATE JUDGE